UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IBRAIN VALDEZ GONZALEZ,

        Petitioner,

v.                                    Case No.  2:26-cv-1136-JES-DNF

TODD M. LYONS, et al.,

        Respondents.

_____/

## OPINION AND ORDER

Petitioner Ibrain Valdez Gonzalez, an immigration detainee currently held at Florida Soft Side South Detention Facility (Alligator Alcatraz), initiated this action by filing a pro se 28 U.S.C. § 2241 petition for writ of habeas corpus.  (Doc. 1). Respondents filed a response and a supplemental response to the petition. (Doc. 8; Doc. 11).  Upon review of the parties' filings, the Court finds that a reply is unnecessary, and the petition must be granted.

## I.   Background

Valdez Gonzalez, a citizen of Cuba, entered the United States on May 21, 1980.  (Doc. 8 at 1).  Subsequent to his parole into the United States, Valdez Gonzalez was convicted of various drug related and other offenses.  (Id. at 1–2).  His was ordered removed from the United States on March 27, 1987.  (Id. at 2).   He was released on an order of supervision on July 5, 2018.  (Id.) Valdez

Gonzalez was taken into ICE custody on November 1, 2025, and has currently been detained for 202 days.  (Doc. 8 at 2).

## II.  Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).  The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  Id.  Detention may continue after the removal period, but not indefinitely.

Valdez Gonzalez argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future.  In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  533 U.S. at 700-01 (2001).  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal."  Id. at 699.  The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]."  Id. at 701.  So, "for the sake of uniform administration in the federal courts," it

2

established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id.    Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention.  If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise.  Id.[1]

Here, there is no dispute that Valdez Gonzalez has been in ICE custody for more than six months following his order of removal and that little has been done to effectuate his removal. On May 15, 2026, the Court directed Respondents to "explain how (and whether) Valdez Gonzalez's removal is likely in the reasonably foreseeable future."  (Doc. 10 at 2).  Respondents contend that Valdez Gonzalez is not entitled to release because ICE intends to eventually remove him to Mexico.  In support, they offer the declaration of Deportation Officer Francisco J. Fondeur, Jr.  (Doc. 11-1).  Officer Fondeur explains that, at some point, ICE intends to transport Valdez Gonzalez "to one of the corresponding ICE field

---

[1] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months.  See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

offices along the southwest border that processes third-country removals to Mexico." (Id.) He asserts that Valdez Gonzalez "will receive a Notice of Removal to Mexico 24 hours prior to his transfer to the relevant field office." (Id. at 3). At that time, the "receiving ERO filed office will then notify Mexico's Instituto Nacional de Migracion (INM) of the petitioner's upcoming removal to Mexico. (Id.) Then, "[f]ollowing INM's final acceptance, he will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico." (Id.)

Officer Fondeur's declaration merely describes the general process for third-country removals to Mexico. There is no timeline provided for Valdez Gonzalez's removal. In fact, Respondents admit that an attempted removal to Mexico at the Hidalgo, Texas port of entry was unsuccessful because of Valdez Gonzalez's criminal history, but posit that it may be possible at "other ports of entry between the United States and Mexico." (Doc. 11-1 at 2). Under Zadvydas, this is insufficient to show a realistic likelihood of Leon-Martinez's removal in the reasonably foreseeable future. See Douglas v. Baker, 812 F. Supp. 3d 525, 532 (D. Md. Oct. 24, 2025) ("[T]he deference baked into the Zadvydas standard does not permit the government to detain a noncitizen and then sit on its hands.

4

Such inaction, or lack of progress in effectuating removal, is precisely what Zadvydas forbids.").[2]

In short, Respondents have had almost forty years—and more than six months since his last detention—to remove Valdez Gonzalez and have still been unable to articulate a specific plan for his removal to Cuba, Mexico, or any other country.  Based on the available evidence, or lack thereof, the Court finds that Respondents have failed to show a significant likelihood that Valdez Gonzalez will be removed in the reasonably foreseeable future.  Therefore, he is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision.  If Valdez Gonzalez fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention.  See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress ... to

---

[2] The Court's confidence in Petitioner's foreseeable removal is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there.  See Sanchez v. Bondi, et al., No. C25-2573-KKE, 2026 WL 160882, at 3–4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on Respondents' ability to remove the petitioner); Arenado-Borges v. Bondi, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent").  And while there may be some possibility that Mexico will eventually accept Petitioner, "that is not same as a significant likelihood that [he] will be accepted in the *reasonably foreseeable future*." Arenado-Borges, 2025 WL 3687518, at *4 (emphasis added, quotations omitted).

subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Valdez Gonzalez to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1. Ibrain Valdez Gonzalez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2. Respondents shall release Valdez Gonzalez within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on May 22, 2026.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

6